UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BROOKE RAY,

Plaintiff,

-v-

RAKUTEN MARKETING LLC, et al.,

Defendants.

25-CV-05146 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Brooke Ray ("Plaintiff" or "Ms. Ray") brings this action against her former employer, Defendant Rakuten Marketing LLC ("Defendant" or "Rakuten"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL"). ECF No. 32 ("Amended Complaint" or "FAC"), ¶¶ 1-2, 58. Presently before the Court is Rakuten's Rule 12(b)(6) motion to dismiss the Amended Complaint for failure to state a claim. ECF No. 34 ("Motion to Dismiss" or "Mot."). For the following reasons, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

### A. Factual Background

The following facts are mostly taken from the Amended Complaint, the allegations of which are accepted as true and construed in the light most favorable to Plaintiff for the purpose of evaluating the Motion to Dismiss. *Xeriant, Inc. v.*

*Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025). The Court also considers the exhibit attached to the Amended Complaint, ECF No. 32-1, since the Amended Complaint "is deemed to include any written instrument attached to it as an exhibit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted); *see* Fed. R. Civ. P. 10(c). The attached exhibit consists of an email from the United States Equal Employment Opportunity Commission ("EEOC") notifying Ms. Ray that a new document was added to her EEOC Public Portal account, ECF No. 32-1 at 2, and the Dismissal and Notice of Rights that the EEOC issued to Ms. Ray (the "Right-to-Sue Notice"), *id.* at 3-6.

Ms. Ray is a Black woman who was and is a resident of the City of New York in the State of New York. FAC, ¶¶ 2, 8, 29. She was employed by Rakuten, a company headquartered in New York City whose business involves marketing their clients' products through promotional links, from August 2010 to February 2024. *Id.*, ¶¶ 9, 12, 14, 53. She was initially employed as a Business Development Manager and was promoted to Senior Manager in July 2013. *Id.*, ¶ 14. She was also promoted to Director of Affiliate Partnerships in July 2019 but was ultimately fired on February 29, 2024. *Id.*, ¶¶ 14, 53.

Ms. Ray's Amended Complaint catalogues various incidences during her employment with Rakuten that she alleges demonstrate retaliation, unequal pay, and persistent discrimination based on race, gender, pregnancy, familial status, or caregiver status. *Id.*, ¶ 13. In August 2012, "Japanese men on [the Rakuten founder's] team . . . flirt[ed] with her" "in the founder's home." *Id.*, ¶ 21. "In 2017,

the CEO of eBates (Rakuten Rewards) . . . grabbed Ms. Ray during an afterparty in Vegas." *Id.*, ¶ 22. "From 2018 to 2020, Ms. Ray was maliciously and seriously harassed by Angela Stizza," which she reported to Rakuten's Human Resources ("HR") department. *Id.*, ¶ 25. Ms. Ray also maintains that she was promised that she could make two hires, but her supervisor pushed back and "only allowed another minority woman to hire Isabel Ramirez to start February 2020," while two White employees "were later hired in 2021." *Id.*, ¶ 24. In 2020, Ms. Ray informed her then supervisor that she was pregnant "and asked to be considered for the [Vice President] role they were opening," but "[i]nstead of considering Ms. Ray for the role, Rakuten hired Ceres Cueva right before Plaintiff went on maternity leave." *See id.*, ¶¶ 25-26. Separately, in 2020, "[t]he head of communications . . . was very dismissive of the tragedies involving George Floyd" and Black Lives Matter. *Id.*, ¶ 27. In March 2021, "Ms. Ray reported . . . [the Senior Vice President] of Client Services, for bullying" because "[s]he excluded Plaintiff from events." *Id.*, ¶ 28. In 2022, "Ms. Ray had a great review with Ceres Cueva," but Ms. Cueva also told Ms. Ray that she would not promote her and described Ms. Ray as "aggressive," which Ms. Ray characterizes as a "Black woman stereotype." *Id.*, ¶ 29. Ms. Ray further contends that she was not given credit for certain professional accomplishments, the credit for one of which was given to a White male colleague instead. *Id.*, ¶¶ 30, 33. In February 2023, Ms. Ray "reported Ceres Cueva for using racial stereotypes and reasons to not promote Plaintiff." *Id.*, ¶ 37. In April 2023, "Ms. Ray got a new boss, Emili Castaneda," and Ms. Ray alleges that "the opportunity [for promotion] was

purposefully not given to [her].” *Id.*, ¶ 38. In May 2023, the Rakuten “CFO said he doesn’t believe in ‘isms’ during a DealMaker event in Palm Springs,” which Ms. Ray characterizes as being said “to make Black/Brown and female employees very uncomfortable.” *Id.*, ¶ 41. Ms. Ray also indicates that budgets for employee resource groups were slashed, “and the Black Employee Alliance could not use a logo during Black history month for external promotions the way Women’s History or LGBTQ groups could at [Rakuten].” *Id.*, ¶ 42.

Ms. Ray also asserts that “Rakuten always treats the White employee[s] better.” *Id.*, ¶ 39. Ms. Ray points out that she “was on an all-White team” and that “Emili the boss prefers White employees.” *Id.*, ¶ 40.

In 2023, Ms. Ray relocated her private residence to Maryland. *Id.*, ¶ 34. In September 2023, Ms. Ray informed her colleagues that she was pregnant, and she took her second maternity leave from November 2023 to February 2024. *Id.*, ¶¶ 43-44, 49. Before Ms. Ray went on maternity leave, she “mentioned” to Ms. Cueva that “she wanted to be Senior Director.” *Id.*, ¶ 45. As Ms. Ray “went out on maternity leave,” Ms. Castaneda “did not have time to help Ms. Ray,” but Ms. Castaneda “did submit Megan Gaffey for promotion to Senior Director and taking over most of Plaintiff’s role.” *Id.* When Ms. Ray returned from maternity leave, she asserts that Ms. Castaneda “had every incentive to push her out,” and that another female employee told Ms. Ray that “since she was on leave, [Rakuten] had time to ‘prepare’ for transition,” which Ms. Ray characterizes as “sound[ing] like [she] was going to be asked to leave because of becoming pregnant and a mother.” *Id.*, ¶¶ 45-46.

Ultimately, Ms. Ray contends that Ms. Gaffey "was [her] younger White replacement." *Id.*, ¶ 47.

When Ms. Ray returned from her second maternity leave in February 2024, she alleges that she was subject to discriminatory treatment. *See id.*, ¶¶ 49-53, 55. For example, when Ms. Ray returned to work in February 2024, she "wanted to join a Sales Kickoff meeting," but Ms. Cueva "said no right away," and so she "was not allowed to join as lead of Financial Services." *Id.*, ¶ 49. Ms. Gaffey "also told her direct reports they should be used to Ms. Ray not being around" due to her recent absence. *Id.* Further, Rakuten took away her responsibilities related to the "Global Publisher Partnerships Insight Series that she created" and "Fintechs." *Id.*, ¶¶ 50-51. Ms. Ray asserts that her lay off on February 29, 2024, was timed so that it would "seem like a generic mass layoff." *Id.*, ¶¶ 52-53. Finally, Ms. Ray maintains that other White female employees at Rakuten's New York office could take maternity leave three times and be promoted, while Ms. Ray and another Black female employee were marginalized after taking maternity leave. *Id.*, ¶ 55.

**B. Procedural History**

On December 23, 2024, Ms. Ray filed a Charge of Discrimination with the EEOC. FAC, ¶ 4; ECF No. 20 at 4. The EEOC subsequently issued Ms. Ray the Right-to-Sue Notice, which is dated March 20, 2025. ECF No. 32-1 at 3. On March 21, 2025, Ms. Ray received an email from the EEOC notifying her that a new document was added to her EEOC Public Portal account. *Id.* at 2; *see* FAC, ¶ 5.

On June 19, 2025, Ms. Ray commenced this action against Defendants Rakuten, Monika Luken ("Ms. Luken"), and Martin Woodrow ("Mr. Woodrow"). ECF No. 1 ("Original Complaint"). In response, on August 26, 2025, Rakuten filed a motion to dismiss Ms. Ray's Original Complaint in its entirety. ECF No. 12. On the same date, Defendants Ms. Luken and Mr. Woodrow also filed a motion to dismiss the Original Complaint in its entirety. ECF No. 16.

On September 3, 2025, the Court issued an order notifying Ms. Ray that she may amend her complaint once as a matter of course under Rule 15(a)(1)(B). ECF No. 24. The Court further instructed, "Plaintiff is on notice that there will likely not be any further opportunity to amend the complaint to address issues raised by the motion to dismiss." *Id.*

On September 30, 2025, Ms. Ray filed the Amended Complaint. FAC. The Amended Complaint asserts five causes of action against Rakuten, claiming (1) violations of Title VII in the form of (i) a hostile work environment and (ii) discrimination on the basis of race and sex;[1] (2) violations of the NYSHRL in the form of (i) a hostile work environment and (ii) discrimination on the basis of race, sex, pregnancy, and familial status; (3) violations of the NYCHRL in the form of (i) a hostile work environment and (ii) discrimination on the basis of race, sex,

[1] Ms. Ray claims Rakuten violated Title VII by discriminating against her on the basis of "race, sex, and pregnancy," FAC, ¶¶ 61, 63, but "for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex," *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991). Accordingly, the Court construes Ms. Ray's Title VII discrimination claim as a discrimination claim on the basis of race and sex.

pregnancy, and caregiver status; (4) retaliation in violation of Title VII, the NYSHRL, and the NYCHRL; and (5) a violation of NYLL § 194. *Id.*, ¶¶ 56-104.

On January 6, 2026, Ms. Ray filed a Notice of Voluntary Dismissal, giving notice that the action was voluntarily dismissed against Defendants Monika Luken and Martin Woodrow. ECF No. 51. On January 8, 2026, the Court so ordered the Notice of Voluntary Dismissal, ECF No. 52, leaving Rakuten as the sole remaining defendant in this action.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true "all factual allegations in the complaint" and "draw[s] all reasonable inferences" in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [the standard] requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

**DISCUSSION**

Defendant argues that Plaintiff's claims are untimely for various reasons; that Plaintiff cannot recover under NYLL § 194 because she worked in Maryland; that the Amended Complaint fails to state plausible claims for (1) discrimination based on race, sex, pregnancy, or familial status, (2) hostile work environment, and (3) retaliation; and that the Court should decline to exercise jurisdiction over Plaintiff's state and local claims if her federal claims are dismissed. ECF No. 35 ("Mem.") at 8-20. Because the Court holds that the Amended Complaint fails to state any plausible claim under Title VII, and because the Court declines to exercise jurisdiction over Plaintiff's remaining claims, the Court only addresses Defendant's arguments as they relate to Plaintiff's Title VII claims. Finally, the Court also addresses Plaintiff's request to amend the Amended Complaint to include claims under 42 U.S.C. § 1981. ECF No. 45 ("Opp'n") at 22.

**A. Timeliness**

Defendant argues that Plaintiff's Title VII claims are untimely for two reasons. First, Defendant contends that Plaintiff's Title VII claims are time-barred because the Original Complaint was filed 91 days after March 20, 2025, which Defendant insists is the date Plaintiff received her Right-to-Sue Notice because that is the date listed on the notice. Mem. at 8-9. Second, Defendant asserts that most of Plaintiff's Title VII claims are time-barred because they occurred more than 300

days prior to the filing of her Charge of Discrimination. *Id.* at 9-11. The Court evaluates each argument in turn.

**1. Ninety Days**

Defendant's first timeliness argument is unpersuasive. "In order to be timely, a claim under Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) (citing 42 U.S.C. § 2000e-5(f)(1)). The date of receipt of a right-to-sue letter is not ordinarily presumed to be the date listed on the right-to-sue letter itself. *See Orsaio v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 22-596, 2023 WL 3410554, at *1 (2d Cir. May 12, 2023) (summary order) ("In order to determine the date of receipt of the [right-to-sue] letter, 'normally it may be assumed . . . that a notice provided by a government agency has been mailed on the date shown on the notice' and 'that a mailed document is received three days after its mailing.'" (quoting *Sherlock*, 84 F.3d at 525-26)). Rather, "[c]ourts in this circuit have repeatedly held that an allegation of the date of receipt of a right-to-sue letter must be credited as true on a motion to dismiss." *Rivera v. Children's & Women's Physicians of Westchester, LLP*, No. 16-CV-714 (PGG) (DCF), 2017 WL 1065490, at *9 (S.D.N.Y. Mar. 18, 2017) (citation omitted) (collecting cases). Here, Plaintiff alleges that she received the Right-to-Sue Notice at some point after it was issued on or about March 21, 2025. FAC, ¶ 5; *see* Opp'n at 8. Accepting as true Plaintiff's allegation that she did not receive the Right-to-Sue Notice until, at the earliest, March 21, 2025, then the Original Complaint was timely filed on June 19, 2025.

### 2. Three Hundred Days

Although Defendant's second timeliness argument has more merit, it does not apply with equal force to each of Plaintiff's claims under Title VII in light of the continuing violation doctrine. A discussion of that doctrine is thus in order to clarify the differing outcomes as applied to Plaintiff's Title VII claims of discrimination, hostile work environment, and retaliation.

#### a. The Continuing Violation Doctrine

For a Title VII claim arising in New York to be timely, a plaintiff must file the charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice's occurrence. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024); *see* 42 U.S.C. § 2000e-5(e)(1). The word "practice" in Title VII generally refers to "a discrete act or single 'occurrence.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002). "Examples of discrete acts include terminating employment, failing to promote, denying a transfer, and refusing to hire." *King*, 96 F.4th at 559 (citing *Morgan*, 536 U.S. at 114-15). "Because a discrete discriminatory act is individually actionable and 'occurs' on the day that it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period." *Id.* (quoting *Morgan*, 536 U.S. at 110).

"The continuing violation doctrine, however, creates an exception to the 300-day rule." *Id.* (cleaned up). Under that doctrine, "if specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as

to amount to a discriminatory policy or practice, a continuing violation may be found." *Id.* (cleaned up). Accordingly, hostile work environment claims are subject to the doctrine "because the very nature of a hostile [work] environment claim involves repeated conduct, and incidents that give rise to a hostile work environment occur over a series of days or perhaps years and a single act of harassment may not be actionable on its own." *Id.* at 559-60 (cleaned up) (citing *Morgan*, 536 U.S. at 115). As a result, "if 'an act contributing to the [hostile work environment] occurs within the filing period,' the hostile work environment claim is timely, and a factfinder can hold a defendant liable for 'the entire time period of the hostile environment,' including the period falling outside of the limitations period." *Id.* at 560 (quoting *Morgan*, 536 U.S. at 117).

However, "an untimely discrete act claim cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act." *Id.* "For example, if a Title VII plaintiff lodges a timely hostile work environment claim against an employer, the plaintiff cannot also lodge a separate claim for a discrete failure to promote if the promotion denial fell outside the limitations period." *Id.* (citing *Morgan*, 536 U.S. at 113-14). "The plaintiff can use the promotion denial as evidence to support *the hostile work environment claim*, but the continuing violation doctrine does not render timely a *distinct discrete act claim* for damages based on the promotion denial." *Id.* (citing *Morgan*, 536 U.S. at 113).

**b. Application**

Since Plaintiff filed her Charge of Discrimination with the EEOC on December 23, 2024, her Title VII claims arising from allegedly unlawful employment practices that occurred on or after February 27, 2024, are timely. Plaintiff's discrimination and retaliation claims premised upon her allegedly unlawful termination on February 29, 2024, are thus timely brought.

However, Title VII claims for any additional discrete acts besides her termination, such as claims based upon Defendant's failure to promote Plaintiff and Defendant diminishing Plaintiff's work responsibilities, are time-barred. No other discrete acts of discrimination are alleged to have occurred after February 27, 2024. *See* FAC, ¶¶ 22-30, 33, 37-53, 56-57, 61, 63-64. Nor can such untimely discrete acts be "pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act." *King*, 96 F.4th at 560. Any Title VII claims based upon such discrete acts of discrimination or retaliation are therefore dismissed.

In contrast, Plaintiff's Title VII hostile work environment claim is potentially timely. "A discrete discriminatory act, such as termination, . . . may . . . render a hostile work environment claim timely *if it is shown to be part of the course of discriminatory conduct that underlies the hostile work environment claim*." *Id.* at 561. Here, Plaintiff alleges that her "being fired in early 2024" is "part and parcel of [her] []hostile work environment claim[]." Opp'n at 11.

The scope of that hostile work environment claim, however, is less clear. "The continuing violation doctrine allows a Title VII plaintiff to rely on a discrete act to render a hostile [work] environment claim timely *only* if the plaintiff establishes that the discrete act was part of the ongoing, discriminatory practice that created a hostile work environment." *King*, 96 F.4th at 561. "An unrelated discrete act, different in kind from the conduct giving rise to the hostile environment, does not trigger the continuing violation doctrine." *Id.*

To determine whether Plaintiff's termination and the incidents that supposedly comprise the hostile work environment are sufficiently related, courts consider "the commonality of the environment in which the incidents took place . . . , the nature of the incidents, and the temporal discontinuity between the incidents.'" *Perez v. City of New York*, No. 23-CV-00447 (CM), 2024 WL 898943, at *11 (S.D.N.Y. Feb. 29, 2024) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 81 (2d Cir. 2010) (Calabresi, J., concurring)). Courts also consider factors such as "whether the same individuals perpetuated the harassment" and "whether the employer took any intervening remedial action." *Choudhury v. NYC Health & Hosps. Corp.*, 824 F. Supp. 3d 394, 409 (S.D.N.Y. 2026) (citation omitted).

The Amended Complaint provides no detail regarding the circumstances of Plaintiff's termination in February 2024, *see* FAC, ¶ 53, thus making it impossible to assess the degree to which her termination is related to the other conduct that purportedly comprises the hostile work environment. The Court notes, however, that most of the incidents upon which Plaintiff bases her hostile work environment

claim occurred in different environments years apart, involve different individuals from Rakuten, and concern different types of discrimination. *See id.*, ¶¶ 21-30, 33, 37-42, 45-51. There is little to connect Plaintiff's allegations that in 2012 certain Japanese men from the founder's team flirted with her, in 2017 a separate individual grabbed her during an afterparty, in 2020 yet another supervisor was dismissive of the tragedy involving George Floyd, and in 2022 a different supervisor described Ms. Ray as "aggressive." *Id.*, ¶¶ 21-22, 27, 29. These events cannot plausibly be characterized as constituting a single continuing course of conduct. *See, e.g.*, *Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 WL 1922624, at *4-5 (S.D.N.Y. Apr. 21, 2020) (holding that alleged conduct that took place with significant gaps in time between incidents, and where different supervisors or co-workers are alleged to be the source of the discrimination, do not constitute a continuing violation).

The Court need not determine which of Plaintiff's various allegations are sufficiently related to her termination claim, such that they comprise a single hostile work environment. *See Dziedzic v. State Univ. of N.Y. at Oswego*, 648 F. App'x 125, 128 (2d Cir. 2016) (summary order) (holding that incident that occurred within 300-day window was not "sufficiently related" to other allegations made regarding different co-workers in a different section of the company so as to render those prior allegations part of a single hostile work environment claim). As will be discussed *infra*, even when taken in their totality, the allegations do not suffice to state a claim for a hostile work environment.

### B. Failure to State a Claim Under Title VII

The Court concludes that the Amended Complaint fails to plausibly allege claims of discrimination, hostile work environment, or retaliation under Title VII. Plaintiff's Title VII claims are therefore dismissed for failure to state a claim.

#### 1. Discrimination

##### a. Legal Standard

Title VII "prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin." *Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022) (citation omitted). "[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

As to the first element, a plaintiff must plead "some harm respecting an identifiable term or condition of employment," although that harm need not be "significant[,] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow v. City of St. Louis*, 601 U.S. 646, 355 (2024) (cleaned up).

As to the second element, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*,

801 F.3d at 87. A plausible inference of discrimination can be alleged by "creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Id.* (cleaned up). Such "bits and pieces" may include, for example, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

**b. Application**

With respect to her termination claim, Plaintiff fails to plausibly allege that her termination was partially motivated by animus towards her race or sex. The Amended Complaint is virtually devoid of any allegations concerning disparaging comments made to Plaintiff about her race, sex, or pregnancy in the years before her termination. *See* FAC, ¶¶ 21-55. Although Plaintiff was called "aggressive" during a performance review and was told to "prepare" for transition on another occasion—comments which she asserts are indicative of discriminatory intent, *id.*, ¶¶ 29, 46—these comments are too facially neutral to give rise to an inference of discrimination. *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 94 (S.D.N.Y. 2024) ("Plaintiff fails to provide sufficient contextual information to support a plausible inference that the facially race-neutral terms used . . . were in fact racially motivated."). Moreover, Plaintiff's allegations that the Rakuten CFO made comments at a public event that "he doesn't believe in 'isms,'"

*id.*, ¶ 41, and that the "Black Employee Alliance could not use a logo during Black history month for external promotions the way Women's History or LGBTQ groups could at [Rakuten]," *id.* ¶ 42, "are untethered from the [termination] that forms the basis of [Plaintiff's] claim," *Puris v. TikTok Inc.*, No. 24-CV-944 (DLC), 2025 WL 343905, at *9 (S.D.N.Y. Jan. 30, 2025). For example, there is no allegation that the CFO played any part in the decision to terminate Plaintiff's employment. *See* FAC, ¶¶ 49-53.

Nor does Plaintiff plausibly allege facts showing that she "was replaced by someone outside [her] protected class" or that "other employees not in Plaintiff's protected classes were similarly situated in all material respects to Plaintiff" and were "treated differently than [her]." *Cretella v. Liriano*, 633 F. Supp. 2d 54, 71 (S.D.N.Y. 2009) (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)), *aff'd*, 370 F. App'x 157 (2d Cir. 2010) (summary order). To the contrary, the Amended Complaint suggests that Plaintiff had previously taken maternity leave without incident, *see* FAC, ¶ 26, that other women were promoted after returning from maternity leave, *see id.*, ¶ 55, and that Defendant actively recruited and employed women, including minority women, *see id.*, ¶ 24. In sum, the Amended Complaint fails to plead facts providing "at least minimal support for the proposition that the [termination] was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. The Court therefore dismisses Plaintiff's Title VII discrimination claim based upon her termination.

### 2. Hostile Work Environment

#### a. Legal Standard

"Title VII . . . prohibit[s] employers from subjecting employees to a hostile work environment." *White v. Orange Urgent Care, PLLC*, No. 24-CV-6827 (KMK), 2026 WL 867141, at *5 (S.D.N.Y. Mar. 30, 2026) (citing *Littlejohn*, 795 F.3d at 320). To plausibly allege a hostile work environment claim under Title VII,

> a plaintiff must plead facts showing 'that the complained of conduct (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].'

*Shkoza v. N.Y.C. Health & Hosps. Corp. & Jacobi Medical Ctr.*, No. 20-CV-3646 (RA), 2021 WL 4340787, at *4 (S.D.N.Y. Sept. 22, 2021) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). Accordingly, the test for a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Further, "generalized hostility or generally uncivilized behavior is not actionable." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 580 (S.D.N.Y. 2023). Rather, the "offending conduct must have been keyed to a protected characteristic of the plaintiff." *Id.* (collecting cases).

To determine whether a plaintiff plausibly alleges a hostile work environment, courts "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23). Ultimately, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (citation omitted).

**b. Application**

The Amended Complaint generically alleges a Title VII hostile work environment claim based on "Plaintiff [being] subjected to a pervasive hostile work environment by the Defendant's conduct." FAC, ¶ 62. The Amended Complaint further alleges that "Plaintiff suffered" a "hostile work environment . . . at Rakuten because of her race, sex, and pregnancy." *Id.*, ¶ 64.

The Amended Complaint fails to plausibly allege a Title VII hostile work environment claim because the alleged conduct was not sufficiently pervasive, objectively hostile, or sufficiently connected to a protected characteristic. The alleged incidents underlying Plaintiff's claim are sporadic rather than continuous, consisting of multiple isolated events over 13 years that were separated by lengthy intervals, including a gap of several years. *See id.*, ¶¶ 22-53. Moreover, barebone assertions about "flirting" on one occasion in 2012, *id.*, ¶ 21, being "grabbed" at an "afterparty in [Las] Vegas" in 2017, *id.*, ¶ 22, negotiating a promotion, *id.*, ¶ 23, not

being allowed to hire other individuals, *id.*, ¶ 24, workplace "bullying" and "harass[ment]," *id.*, ¶¶ 25, 28, being excluded from events, *id.*, ¶¶ 28, 49, being called "aggressive" during a performance review, *id.*, ¶ 29, being assigned to "an all-White team," *id.*, ¶ 40, and diminished job responsibilities, *id.*, ¶¶ 50, 51, are insufficient to plausibly allege an objectively hostile work environment. *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x 115, 119 (2d Cir. 2010) (summary order) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her" (citing *Harris*, 510 U.S. at 21)); *see also Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (concluding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," and "yell[ing] and talk[ing] down to," among other factors, was not enough to show that defendants' conduct was sufficiently severe), *aff'd*, 488 Fed. App'x 530 (2d Cir. 2012) (summary order). Finally, many of the allegations in the Amended Complaint—such as the conclusory assertions about workplace bullying and harassment, FAC, ¶¶ 25, 28—are completely disconnected from any allegations about protected characteristics. *See, e.g.*, *Parron v. Herbert*, No. 17-CV-3848 (GBD), 2018 WL 2538221, at *11 (S.D.N.Y. May 18, 2018) ("Conduct that is merely offensive, unprofessional, or childish cannot support a hostile work environment

claim." (cleaned up)), *aff'd*, 768 F. App'x 75 (2d Cir. 2019) (summary order). The Court thus dismisses Plaintiff's Title VII hostile work environment claim.

### 3. Retaliation

#### a. Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Vega*, 801 F.3d at 89-90 (quoting 42 U.S.C. § 2000e-3(a)). In other words, Title VII "prohibits an employer from discriminating against an employee because the employee has engaged in protected activity." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023). Accordingly, for a plaintiff's Title VII retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege facts showing that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (citation omitted).

As to the first element, "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3). Such activity encompasses "informal protests of discriminatory employment practices, including

making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). However, "informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012). Consequently, "[c]omplaints centered on general allegations of harassment unrelated to race [or sex] are not protected activity under Title VII." *Id.* (cleaned up). Nonetheless, the conduct opposed need not be "in fact unlawful; it is sufficient if the plaintiff had a good faith, reasonable belief that she was opposing a practice prohibited by Title VII." *Id.* at 111 (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006)).

As to the second element, the employer must have "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

As to the third element, "[a]n adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Tyson-Phipps v. Rubio*, 779 F. Supp. 3d 440, 459 (S.D.N.Y. 2025) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices unique to a particular situation." *Mathirampuzha*, 548 F.3d at 78 (citation omitted).

As to the fourth element, "'the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action,' which does not require that retaliation 'was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.'" *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 280 (S.D.N.Y. 2024) (quoting *Vega*, 801 F.3d at 90-91). A causal connection can be "shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (cleaned up). There is no "bright line . . . beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). However, when "a party relies on the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, courts uniformly hold that the temporal proximity must be very close." *Ancrum v. N.Y.C. Dep't of Env't Prot.*, No. 23-CV-10978 (JPC), 2024 WL 5009145, at *5 (S.D.N.Y. Dec. 6, 2024) (collecting cases).

**b. Application**

Plaintiff's claim for termination in retaliation for protected activity likewise does not survive. In terms of protected activity, the Amended Complaint alleges

that Plaintiff (1) reported Angela Stizza for harassment to Rakuten's HR department in January 2020, (2) reported Beth Benedict for bullying in March 2021, and (3) reported Ceres Cueva for "using racial stereotypes and reasons to not promote [her]" to Rakuten International's Chief Operating Officer in February 2023. FAC, ¶¶ 25, 28, 37.

The Amended Complaint fails to plausibly allege a retaliation claim under Title VII as it relates to Plaintiff's complaints.[2] To start, the Amended Complaint fails to allege facts showing that Plaintiff's complaints from 2020 and 2021 constituted protected activity because they did not concern conduct prohibited by Title VII. Concerning the complaint from 2020, the Amended Complaint simply alleges that "Ms. Ray was maliciously and seriously harassed by Angela Stizza, and she reported this to Christina Huen in HR in January 2020." FAC, ¶ 25. With respect to the complaint from 2021, the Amended Complaint alleges "Ms. Ray reported Beth Benedict, SVP of Client Services, for bullying" because "[s]he excluded Plaintiff from events" since "Ms. Ray wanted to take over a financial networking mixer in 2019" and "Beth felt threatened." *Id.*, ¶ 28. Because these "[c]omplaints centered on general allegations of harassment unrelated to race" or

[2] Plaintiff further argues that she suffered "repeated retaliation" for submitting "requests for leave." Opp'n at 21. However, "[m]erely requesting . . . maternity leave is not protected activity under Title VII." *Tolleson v. Unity Health Sys.*, No. 09-CV-6350 (CJS), 2012 WL 1834206, at *7 (W.D.N.Y. May 18, 2012) (citing *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (holding that "[a] simple request for maternity leave would not suffice" to constitute protected activity under Title VII)). Moreover, as stated earlier, any claims for conduct arising prior to February 2024 are time-barred.

sex, they "are not protected activity under Title VII." *Risco*, 868 F. Supp. 2d at 110 (citation omitted). Accordingly, they cannot form the basis of a Title VII retaliation claim.

Although Plaintiff's February 2023 complaint qualifies as a protected activity because it objects to conduct prohibited by Title VII, *see* FAC, ¶ 37, it cannot form the basis of a plausible Title VII retaliation claim because Plaintiff fails to argue or allege facts that plausibly show a causal connection between the February 2023 complaint and her employment termination in February 2024. Indeed, besides conclusorily listing her complaints, Plaintiff makes no attempt to argue that there is a causal connection between the February 2023 complaint and her termination. *See* Opp'n at 21-22. The Amended Complaint therefore relies on temporal proximity alone to show a causal connection. *See* FAC, ¶¶ 37, 53, 92-97. Yet a one-year gap between the protected activity and the adverse employment action—in this context and without additional allegations—is far too attenuated to plausibly infer a retaliatory motive. *See, e.g.*, *Ancrum*, 2024 WL 5009145, at *5 (dismissing a Title VII retaliation claim for failure to state a claim when it sought to demonstrate a causal connection on a four-month temporal gap alone). Accordingly, the Amended Complaint fails to plausibly allege a Title VII retaliation claim based on the February 2023 complaint.

Finally, Plaintiff argues that "[s]he made a series of other complaints while going on maternity leave." Opp'n at 21 (citing FAC, ¶¶ 43-55). However, the

Amended Complaint makes no mention whatsoever of any such complaints. *See* FAC, ¶¶ 43-55. The Court thus dismisses Plaintiff's Title VII retaliation claim.

**C. Leave to Amend**

The Court denies Plaintiff's request for leave to further amend the Amended Complaint to include a claim under 42 U.S.C. § 1981. *See* Opp'n at 22. "[T]he Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). A finding of "good cause" depends on the diligence of the moving party. *Id.* (collecting cases). "A district court has broad discretion in deciding whether good cause exists to amend the scheduling order[.]" *Tatintsian v. Vorotyntsev*, No. 16-CV-7203 (GHW), 2021 WL 780139, at *4 (S.D.N.Y. Jan. 27, 2021) (citation omitted).

Here, the Court previously set a deadline for Plaintiff to amend the Original Complaint and warned that "Plaintiff is on notice that there will likely not be any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 24. Plaintiff fails to present any reason as to why she could not have previously amended the Original Complaint to include a claim under Section 1981. *See* Opp'n at 22. Indeed, she altogether fails to argue that she was diligent or that there is good cause to amend. *See id.* The Court thus finds that Plaintiff has not demonstrated sufficient diligence to establish good cause to further amend her complaint. Accordingly, the Court denies Plaintiff leave to amend.

### D. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7 (1988). Indeed, "[c]ourts typically refrain from exercising supplemental jurisdiction over state-law claims if all federal claims are dismissed." *Jones v. Bloomingdale's*, No. 17-CV-1974 (RA), 2018 WL 6067227, at *7 (S.D.N.Y. Nov. 20, 2018).

Here, considering that the parties in this action are not diverse under 28 U.S.C. § 1332(a)(1), *see* FAC, ¶¶ 8-9, and that the Court has dismissed all federal claims in this action, *infra* Discussion pts. A-B, the Court has dismissed all claims over which it has original jurisdiction. Accordingly, for reasons of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims and dismisses those claims without prejudice.

## CONCLUSION

Accordingly, the Motion to Dismiss is **GRANTED**. The Clerk of Court is

directed to terminate all pending motions and close this case.

SO ORDERED.

Dated: July 21, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge